UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:15-cv-14192-ROSENBERG/LYNCH

DONNA JANE WATTS,

    Plaintiff,

v.

CITY OF PORT ST. LUCIE, FLORIDA, *et al.*,

    Defendants.
    _____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** comes before the Court on Motions to Dismiss filed by Defendants City of Port St. Lucie, Michael Connor, and Edward Glaser [DE 10, 15, 16]. The Court has reviewed the motions, the responses, *see* DE 17-19, and the record, and is otherwise fully advised in the premises. As more fully explained below, Port St. Lucie's Motion to Dismiss [DE 10] is **GRANTED IN PART** and **DENIED IN PART** and Connor and Glaser's Motions to Dismiss [DE 15, 16] are **DENIED**.

Count IV, for common law invasion of privacy, is dismissed with prejudice for failure to state a claim, to the extent it is asserted against Port St. Lucie. Count II against Port St. Lucie, for unlawful breach of privacy under 42 U.S.C. § 1983, is dismissed without prejudice, for failure to allege a sufficient basis for municipal liability. Counts V and VI against Port St. Lucie, for common law negligent supervision and training, are dismissed without prejudice for Plaintiff to amend its conclusory pleading.

## I.      BACKGROUND[1]

Plaintiff Donna Watts is a trooper with the Florida Highway Patrol. DE 1 at ¶ 3. On October 11, 2011, Plaintiff pulled over an off-duty City of Miami police officer and cited him for reckless driving. DE 1 at ¶ 10. Law enforcement officers and officials were angered by this, and as a result she was threatened and harassed. DE 1 at ¶¶ 11-13. She knew that her unlisted telephone numbers and home address were accessible to Florida law enforcement officers through the Driver and Vehicle Information Database ("DAVID"). DE 1 at ¶ 14. She contacted the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") and ascertained that the individually named Defendants – Peter Chunn, Michael Connor, and Edward Glaser – "obtained, disclosed, and/or used her personal information from a motor vehicle record on the DAVID system[.]" DE 1 at ¶¶ 16-18. Chunn, Conner, and Glaser are employed by Defendant City of Port St. Lucie. DE 1 at ¶¶ 5-7.

In December 2012, Plaintiff filed a single case against over 100 defendants, including Port St. Lucie, Connor, and Glaser. *See Watts v. City of Palm Beach Gardens, et al.*, Case No. 12-cv-81406-DMM. In May 2014, the court dismissed that action without prejudice as to all defendants except for the Town of Juno Beach. *See id.* at DE 658. Plaintiff thereafter filed separate actions against the dismissed defendants, several of which are proceeding concurrently in this District. *See Watts v. City of Miami, et al.*, Case No. 15-cv-21271-RNS; *Watts v. Village of Biscayne Park, et al.*, Case No. 15-cv-21291-KMW; *Watts v. City of Miami Beach*, *et al.*, Case No. 15-cv-21292-RNS; *Watts v. Broward Cty. Sheriff, et al.*, Case No. 15-cv-61112-WJZ; and *Watts v. City of Hollywood, et al.*, 15-cv-61123-CMA.

---

[1] When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Accordingly, this factual background is taken from the Complaint. *See* DE 1.

On May 28, 2015, Plaintiff filed the instant Complaint against Port St. Lucie, Chunn, Connor, and Glaser. *See* DE 1. The Complaint brings six claims: (I) violation of the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, against all Defendants; (II) violation of her Fourth Amendment rights under 42 U.S.C. § 1983, against Port St. Lucie; (III) violation of her Fourth Amendment rights under 42 U.S.C. § 1983, against the individual Defendants; (IV) common law invasion of privacy against all Defendants; (V) common law negligent supervision against Port St. Lucie; and (VI) negligent training against Port St. Lucie.

On June 8, 2015, Plaintiff voluntarily dismissed the claims against Chunn. *See* DE 20. Port St. Lucie, Connor, and Glaser have moved to dismiss the claims against them. *See* DE 10, 15-16. Plaintiff responded to the motions. *See* DE 17-19. Defendants did not reply.

In one of the concurrently proceeding cases noted *supra*, Plaintiff filed a complaint that is essentially identical to the complaint in this case.[2] *See Watts v. City of Hollywood, et al.*, No. 0:15-cv-61123-CMA at DE 1. Defendant City of Hollywood moved to dismiss the complaint on many of the same grounds raised by the Defendants in this case. *Id.* at DE 13. On November 17, 2015 Judge Cecilia M. Altonaga issued an order granting the motion to dismiss in part. *Id.* at DE 45. Having reviewed the order and the relevant case law, this Court agrees with the analysis therein and adopts the reasoning of that order, as noted further *infra*. Judge Altonaga's order is attached as Exhibit 1.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[2] The only differences are the names of the defendants, the number of the alleged violations, the numbering of some paragraphs, and the allegation in paragraph 15 of the complaint against the City of Hollywood, which alleges that "between October 2011 and January 19, 2012, well over 88 law enforcement officers from 25 different agencies had viewed her private driver's license information more than 200 times." *Watts*, 0:15-cv-61123-CMA, DE 1 at 4 ¶ 15. This last allegation is not contained in the complaint against Port St. Lucie and its employees. *See* DE 1.

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

### III.   ANALYSIS

A.   <u>Count I: Violation of the DPPA (Against all Defendants)</u>

**1. Whether Port St. Lucie can be vicariously liable for the actions of Connor and Glaser under the DPPA**

Port St. Lucie argues that Count I for violation of the DPPA should be dismissed because "section 2724 [of the DPPA] does not provide a cause of action against any of the entity Defendants, including [Port St. Lucie], merely because they employed the individual," and that, as a Florida municipality, Port St. Lucie does not fit under the definition of a "person" who can be liable under the act. *See* DE 10 at 5; *see also* 18 U.S.C. §§ 2724, 2725(2). The Court agrees with Judge Altonaga that "the DPPA implicitly recognizes a *respondeat superior* theory of liability against municipalities." *See Watts*, No. 0:15-cv-61123-CMA, DE 45 at 7. Accordingly, this argument is without merit and does not warrant dismissal of Count I as to Port St. Lucie.

### 2. Whether the DPPA is an unconstitutional exercise of Congress' Commerce Clause power, as applied to these Defendants

Port St. Lucie, Connor, and Glaser argue that the DPPA is unconstitutional as applied to them in this case, because the DPPA was enacted under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, but the present case does not involve economic activity. *See* DE 10 at 5-7; DE 15 at 5-8. They argue that "driver information [is not] in commerce when a law enforcement officer, using a channel restricted to law enforcement, functions improperly . . . [and] obtains driver information for a non-commercial purpose[.]" DE 10 at 6. They argue, "There are no allegations in the Complaint . . . that [Defendants] sold any of the information obtained from the searches, nor are there are any allegations that they [sic] had any intent or motive to do so." *Id.* They argue, "Congress' power to regulate under the Commerce Clause is restricted to matters involving economic activity and, absent economic activity, Congress has no power to legislate." *Id.* They compare this case to *United States v. Lopez*, 514 U.S. 549 (1995) (striking down statute criminalizing possession of a firearm in a school zone as invalid exercise of the commerce clause) and *United States v. Morrison*, 529 U.S. 598 (2000) (striking down a provision of the Violence Against Women Act as an invalid exercise of the commerce clause).

The United States Supreme Court expressly upheld the constitutionality of the DPPA in *Reno v. Condon*, 528 U.S. 141 (2000). South Carolina and its attorney general argued the DPPA violated the Tenth and Eleventh Amendments to the United States Constitution; the United States responded that the DPPA was a proper exercise of Congress' authority under the Commerce Clause. *Id.* at 147-48. The Supreme Court agreed with the United States:

> The United States bases its Commerce Clause argument on the fact that the personal, identifying information that the DPPA regulates is a "thin[g] in interstate commerce," and that the sale or release of that information in interstate commerce is therefore a proper subject of congressional regulation. *United States v. Lopez,* 514 U.S. 549, 558–559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). We

5

> agree with the United States' contention. The motor vehicle information which the States have historically sold is used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce to contact drivers with customized solicitations. The information is also used in the stream of interstate commerce by various public and private entities for matters related to interstate motoring. Because drivers' information is, in this context, an article of commerce, its sale or release into the interstate stream of business is sufficient to support congressional regulation. We therefore need not address the Government's alternative argument that the States' individual, intrastate activities in gathering, maintaining, and distributing drivers' personal information have a sufficiently substantial impact on interstate commerce to create a constitutional base for federal legislation.

*Id.* at 148-49; *see generally Lopez*, 514 U.S. at 557 (identifying three broad categories of activity that Congress may regulate under its commerce power: (1) the use of channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though they may come only from intrastate activities; and (3) those activities having a substantial relation to interstate commerce).

Port St. Lucie, Connor, and Glaser argue that *Reno* is distinguishable because the Supreme Court's finding that drivers' personal information is a "thing in commerce" was "based on the assumption that the information was being sold for use in the private sector by a private business," and that this rationale does not apply in a case such as this one, where the defendants are alleged to have accessed the information for "non-economic reasons." DE 10 at 6; *see also* DE 15 at 5; DE 16 at 5. Federal district courts in this circuit have declined to distinguish *Reno* on these grounds. *See Truesdell v. Thomas*, No. 5:13-CV-552-OC-10PRL, 2015 WL 413103, at *7 (M.D. Fla. Jan. 30, 2015) ("The Court therefore disagrees that *Reno* and its progeny stand for the proposition that *only* the portion of the DPPA which addresses the sale or attempted sale of driver's personal information is constitutional. It also is worth noting that *Reno* did not single out any language in the DPPA addressing the sale or purchase of drivers' information—rather, *Reno* held the Act to be constitutional as a whole."); *Ela. v. Orange Cty. Sheriff's Office*, No. 6:13-cv-

491-Orl-28KRS, 2014 WL 325697, at *4-5 (M.D. Fla. Jan. 29, 2014) (declining to distinguish *Reno* in case where defendant argued information was "accessed and used locally for personal reasons" and was not placed into the stream of commerce); *Zittel v. City of Gainesville*, No. 1:13cv138-MW/GRJ, 2013 WL 4811241, at *1 (N.D Fla. Sept. 9, 2013) ("Inasmuch as the Supreme Court has already determined that the DPPA passes constitutional muster, this Court declines Defendant City of Gainesville's invitation to excise instances where drivers' information is misappropriated for individual use as opposed to instances in which such information is sold or released."). This Court agrees with the reasoning of those decisions and finds that applying the DPPA to the Defendants in this case would not be an unconstitutional exercise of Congress' power under the Commerce Clause.

B.     Counts II-III: Unlawful Searches and Breaches of Privacy under 42 U.S.C. § 1983

Port St. Lucie argues Count II should be dismissed, firstly, because an impermissible disclosure of personal information in violation of the DPPA does not offend any constitutional right.[3] *See* DE 10 at 8. Connor and Glaser argue that Count III against them should be dismissed for the same reason. *See* DE 15 at 8-11; 16 at 8-11. Second, Port St. Lucie argues that Count II fails to state a claim for municipal liability because it fails to specifically allege any custom or policy of Port St. Lucie that caused the DPPA violations, and makes only "bare, conclusory, [and] unsupported allegations." DE 10 at 8.

The Court agrees with Judge Altonaga's analysis of these issues in *Watts v. City of Hollywood, et al.*, No. 0:15-cv-61123-CMA, DE 45 at 24-28 (Ex. 1), wherein she considered a complaint with allegations identical to those in the instant complaint. Thus, to the extent

---

[3] To the extent Port St. Lucie argues that it is entitled to "qualified immunity," *see* DE 10 at 8, Plaintiff is correct that qualified immunity is not applicable to municipal entities such as Port St. Lucie. *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980) (a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983").

Plaintiff's § 1983 claims are premised on a violation of her purported federal constitutional right to privacy in her driver's license information, they are dismissed with prejudice. To the extent Plaintiff's § 1983 claims are premised on a violation of a right to privacy created by the DPPA, however, they do state a claim.

Nevertheless, Count II against Port St. Lucie is dismissed without prejudice due to Plaintiff's failure to properly allege a basis for municipal liability. Because the futility of pleading a section 1983 claim against Port St. Lucie based on a violation of Plaintiff's rights under the DPPA is not certain – at least not yet – the Court gives Plaintiff one last chance to plead her claim against Port St. Lucie, failing which Count II will be dismissed with prejudice.

C. **Counts IV-VI: Common Law Invasion of Privacy, Negligent Supervision, and Negligent Training**

Port St. Lucie moves to dismiss Counts IV-VI. *See* DE 10 at 9-11. Counts V and VI are against Port St. Lucie only; Count IV is against all Defendants. *See* DE 1 at 8-11. However, Connor and Glaser have not moved to dismiss Count IV. *See* DE 15, 16. Thus, the Court will consider whether Counts IV-VI should be dismissed as to Port St. Lucie.

**1. Failure to State a Claim for Invasion of Privacy (Count IV)**

Port St. Lucie argues that Plaintiff fails to state a claim for common law invasion of privacy under Florida law. *See* DE 10 at 10. Plaintiff fails to respond to this argument. *See* DE 17. The Court agrees with Judge Altonaga's analysis of this issue in *Watts v. City of Hollywood, et al.*, No. 0:15-cv-61123-CMA, DE 45 at 17-20 (Ex. 1), wherein she considered a complaint with identical allegations to the instant complaint and found it failed to state a claim under Florida law because Plaintiff has pled neither intrusion into a "place" nor invasion of an "outrageous" character. Accordingly, Count IV for invasion of privacy is dismissed with prejudice, to the extent it is asserted against Port St. Lucie.

### 2. Failure to State a Claim for Negligent Supervision and Training (Counts V-VI)

Port St. Lucie argues that Counts V and VI should be dismissed because they "fail to plead sufficient ultimate facts and rather assert mere conclusory allegations of the pleader and buzz words[.]" DE 10 at 10. The Court agrees with Judge Altonaga's analysis of these issues in *Watts v. City of Hollywood, et al.*, No. 0:15-cv-61123-CMA, DE 45 at 20-22 (Ex. 1), wherein she considered a complaint with materially identical allegations to the instant complaint and found them to be overly vague and conclusory. Accordingly, Counts V and VI are dismissed without prejudice for Plaintiff to correct these pleading deficiencies in an amended complaint.

### 3. Sovereign Immunity Regarding All Common Law Claims (Counts IV, V and VI)

Port St. Lucie argues that Counts IV, V, and VI should be dismissed under Florida's sovereign immunity statute, Fla. Stat. § 768.28, for two reasons. *See* DE 10 at 9. First, Port St. Lucie argues that Plaintiff alleges that Connor and Glaser acted intentionally and maliciously, and therefore Port St. Lucie cannot be liable under Florida's sovereign immunity statute. *See* Fla. Stat. § 768.28(9)(a) (emphasis added); *Perez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 917 F. Supp. 2d 1261, 1268 (S.D. Fla. 2013) (holding this statute "renders the liability of the officers and their respective employers mutually exclusive. . . . [E]ither the officer, or the employer, or neither is liable to Plaintiff, but both cannot be liable to Plaintiff. . . . Plaintiff may plead liability in the alternative, but must do so in separate counts"). Plaintiff argues that the Complaint properly pleads liability in the alternative, because she has alleged malicious behavior by Connor and Glaser only under Count III against them, and that Counts IV-VI against Port St. Lucie do not so allege. *See* DE 17 at 11-12. The Court finds that this issue is moot, in light of its dismissals of Counts IV, V, and VI.

Second, Port St. Lucie argues that the state law tort claims must be dismissed because Plaintiff fails to allege compliance with the notice provisions of Fla. Stat. § 768.28(6)(a). *See* DE

10 at 9-10. The Complaint alleges: "All notice and other conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute § 768.28." DE 1 at 9 ¶ 49; *see also* DE 17 at 12. Port St. Lucie argues this is insufficient because it is a "blanket conclusory statement" and Plaintiff "fails to attach any proof of notice, as to" Port St. Lucie. *See* DE 10 at 9. However, none of the case law cited by Port St. Lucie holds that a Plaintiff must attach proof of notice. In fact, in *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010 (1979), the Florida Supreme Court stated that "[p]erformance of the condition [in Fla. Stat. § 768.28(6)(a)] should be alleged in the complaint in accordance with Florida Rule of Civil Procedure 1.120(c)," which rule provides: "In pleading the performance or occurrence of conditions precedent, it is *sufficient to aver generally* that all conditions precedent have been performed or have occurred." (Emphasis added.) Accordingly, Plaintiff has properly alleged compliance with section 768.28(6)(a), and dismissal is not appropriate on this ground.

D.     **All Counts against Defendants Connor and Glaser**

Defendants Connor and Glaser raise several arguments applicable to all of the counts against them. First, they argue the Complaint should be dismissed under Federal Rule of Civil Procedure 8 because it is impermissible "shotgun pleading." *See* DE 15 at 3-4; DE 16 at 3-4. "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). This type of pleading is frowned upon because "in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous." *Id.* Although some counts of Plaintiff's

Complaint do incorporate paragraphs in previous counts by reference, it is not an impermissible "shotgun pleading," because it does so only for convenience, and the Court is able to ascertain which paragraphs are relevant to each of the claims. Accordingly, this argument is without merit.

Second, Defendants Connor and Glaser argue that, because Plaintiff asserts they "acted in [their] official capacities within the course and scope of [their] employment," and "a suit against a governmental officer in his or her official capacity is the same as a suit against the entity that employs the officer, . . . Plaintiff's individual capacity claims asserted against [them] should be dismissed with prejudice as . . . redundant and unnecessary." DE 15 at 4; DE 16 at 4-5. Defendants Connor and Glaser appear to misapprehend the nature of Plaintiff's claims. The Complaint alleges that they are being sued in their *individual* capacity, not their official capacity. *See* DE 1 ¶¶ 6-7. Even if Defendants committed the actionable conduct while acting within the course and scope of their employment, this does not transform the claim into an action against them in their *official* capacity. *See, e.g., Barnett v. Baldwin Cty. Bd. of Educ.*, 60 F. Supp. 3d 1216, 1235-40 (S.D. Fla. 2014) (dismissing claims against individual defendants in their official capacity as duplicative, but discussing claims against the individual defendants in their individual capacity that remained pending). Accordingly, this argument is without merit.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant City of Port St. Lucie's Motion to Dismiss [DE 10] is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendant Michael Connor's Motion to Dismiss [DE 15] and Defendant Edward Glaser's Motion to Dismiss [DE 16] are **DENIED**.

3. Count IV of the Complaint [DE 1] is **DISMISSED** with prejudice, to the extent it is asserted against Port St. Lucie. Counts II, V, and VI of the Complaint [DE 1] are

**DISMISSED** without prejudice. Plaintiff has until December 14, 2015 to file an amended complaint.[4]

4. Judge Altonaga's November 17, 2015 order in *Watts v. City of Hollywood, et al.*, No. 0:15-cv-61123-CMA, the reasoning of which this Court has adopted in several respects, is attached as Exhibit 1.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 30th day of November, 2015.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

---

[4] Thus, the following claims are unaffected by this Order: Count I against all Defendants; Count III against Connor and Glaser; and Count IV, to the extent it is brought against Connor and Glaser. *See* DE 1 at ¶¶ 1-28, 39-55.